GERKHARDT, Respondent, vs. MANDARIN COMPANY, Appellant.

*October 17—November 13, 1923.*

*Landlord and tenant: Possession under lease or contract of hiring: Expenses incurred in repair of property: Liability of owner: Evidence: Practical construction: When necessary.*

1. An agreement under which the defendant, who was the owner of a long-term lease of property, let a third person in possession "in complete charge of its [the owner's] café," and which required him "to assume complete management," provided how his salary or compensation "for acting as the manager of said business" should be paid, and contained other provisions foreign to the terms of a lease, constitutes a contract of hiring and not a lease, and the owner is liable for work and material furnished in the repair of the property at the request of the person in possession. p. 14.

2. The admission of evidence that the defendant in another action had claimed that its agreement with the third party constituted a contract of hiring and not a lease was not error, though the fact that the agreement was a contract of hiring was so clearly apparent from the terms of the instrument itself that evidence of construction by the parties was not necessary. p. 15.

OWEN and DOERFLER, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

Action begun in the civil court of Milwaukee county to recover for carpenter work and material furnished in the repair of part of No. 174 Second street, Milwaukee. The defendant had a sixty-year lease of the above premises and claimed the premises repaired were in the possession of one Mike Adams as its lessee and hence it was not liable. The plaintiff claimed Adams was in possession under a contract of hiring. The contract between them was as follows:

"This agreement, made and entered into by and between the *Mandarin Company,* a corporation, first party, and Mike Adams, of the city of Milwaukee, second party, witnesseth as follows:

"That the first party places the second party in complete charge of its café and restaurant occupying the north half of the first floor of the Toy Building, at No. 172–4 Second street, Milwaukee, Wisconsin, upon the following terms and conditions:

"(a) That the second party is to assume complete management of said café and restaurant, furnish all capital necessary for conducting the same, and out of the gross receipts (and before any other division is made of the income derived from conducting said place of business) the sum of $300 per month is to be deducted up to November 1, 1921, and thereafter $400 per month, and paid over to the first party, thereby securing to first party a net profit of $300 per month up to November 1, 1921, and thereafter $400 per month. In the event that the state and federal governments shall permit the sale of beer and wines, then the net profits to be deducted per month as aforesaid shall be $600 from the time of the institution of the sale thereof on the first party's premises; that thereafter all bills outstanding and incurred for and on account of the running of said place of business shall be paid, and out of the balance of the net profits remaining, one half thereof shall be paid to the first party and the remaining one half thereof shall be paid over to and be received by the second party in full payment of any and all claims due or to become due him

as salary or compensation for acting as the manager of said business under this agreement.

"(b) It is further stipulated and agreed by and between the parties hereto that the second party shall furnish the necessary capital for conducting and carrying on said café and restaurant business, and shall at all times hold and keep the first party free and clear of and from any and all liability for claims and demands arising out of his conducting and managing said business as aforesaid; that he hereby agrees to become liable for and to reimburse the first party in case the first party shall be held liable on any such claims or demands.

"As it will require the expenditure of a considerable sum of money to alter said premises and properly equip said premises for restaurant purposes, the second party agrees to furnish the funds for that purpose not exceeding $800, and the net profits mentioned herein shall be paid over to the second party until all sums so advanced by him shall have been paid.

"Provided, that if this agreement is terminated by the first party, then the first party agrees to pay the second party any balance advanced by him under the provisions of this paragraph, a reasonable allowance being made for wear and tear resulting from the use thereof by the second party. In the event that this agreement shall be terminated by the second party under the sixty-day provision contained in the last paragraph, then the second party shall be permitted to remove from said premises as his own any and all equipment installed by him under this agreement, or such proportionate part thereof as he shall not have been repaid for under the foregoing provisions. In such event the second party shall have the right to elect to pay to first party such sums, if any, as shall have been repaid him, and take the whole of the equipment supplied by him, or take such proportionate part of said equipment as shall be equal in value to the amount then not repaid to him as aforesaid. The same shall apply to all stock and merchandise on hand at the time of such termination.

"The second party shall keep an accurate account of all receipts and disbursements, and of all bills and demands incurred, and shall account to the first party at the end of

each week; and if on such accounting it shall be found that the claims and demands shall have been incurred for which the first party's credit shall have been pledgèd by the second party, then the second party shall, upon demand by the first party, pay to the first party a sufficient sum of money to cover all such claims and demands, and failure of the second party so to do for a space of three days shall entitle the first party to forthwith cancel this agreement; but such cancellation shall not discharge or release the second party from liability for such debts or claims. The $300 per month to be deducted out of the gross receipts may be deferred, at the option of the second party, for the first three months, but the whole amount thereof shall be deducted within said three months, deduction to be made to commence March 1, 1921.

"This agreement shall go into effect on the 10th day of February, 1921, and shall continue in full force for a period of one year from said date; and the second party is hereby granted an option for an additional year's employment under this contract, from the expiration of the first, upon giving thirty days' written notice of his election to exercise said option. In case the operation of the business shall not yield a reasonable profit to the parties hereto, either of the parties may terminate this agreement by giving to the other party sixty days' notice of intention to terminate the relations hereby established. In the event that the first party sells its lease and place of business, it may terminate this agreement by giving ninety days' notice."

The civil court found in favor of the plaintiff, and the defendant appealed to the circuit court, where the judgment of the civil court was affirmed, and the defendant appealed.

For the appellant there was a brief by *Drew & Karrow*, attorneys, and *Aaron B. Rosenthal*, of counsel, all of Milwaukee, and oral argument by *Mr. Rosenthal*.

For the respondent there was a brief by *Stover & Stover* of Milwaukee, and oral argument by *Daniel G. Stover*.

VINJE, C. J. We have reached the conclusion that the judgment must be affirmed because the agreement constitutes a contract of hiring and not a lease. Some of the

parts of the agreement that unmistakably point to such conclusion are these: "The party of the first part places the second party in complete charge of its café and restaurant;" "the second party is to assume complete management of said café and restaurant." Then it is provided what shall constitute "full payment of any and all claims due or to become due him as salary or compensation for acting as the manager of said business under this agreement;" and it is provided that the second party shall indemnify the first party against all claims arising out of his conducting the business, and must render a weekly account of all receipts and disbursements, and must take care of all claims for which the first party's credit shall have been pledged by the second party. It also contains an option "for an additional year's *employment* under this contract." These and other provisions so aptly express a contract of hiring and are so foreign to the terms of a lease that we are clearly of the opinion that the contract was correctly interpreted by the trial court and by the circuit court.

It was not error to show that in another suit the defendant claimed the agreement constituted a contract of hiring and not a lease, though the fact is so clearly apparent from the terms of the instrument itself that evidence of construction by the parties was not necessary.

*By the Court.*—Judgment affirmed.

OWEN, J. (*dissenting*). This case was argued and seems to have been decided on the theory that if the contract between the parties can be given a name the case is solved—that if it be called a contract of employment the defendant is liable, while if it be called a lease the defendant is immune from liability. Without affirming that the document is a lease, I am clearly of the opinion that it is not a contract of employment. While the contract contains provisions not usually found in a lease, it likewise contains numerous provisions utterly inconsistent with a contract of

employment: notably the provision that the party of the second part (employee) is to pay the party of the first part (employer) $300 per month of the net profits of the business; that the party of the second part (employee) is to furnish all capital necessary for conducting the business; and that the party of the second part (employee) is to furnish the funds, not exceeding $800, to properly equip the premises for restaurant purposes. It seems to me that it is a renting on shares and is more analogous to a "cropper's contract" than any other familiar to the law. However, it is the terms of the contract which must be examined and analyzed in order to determine defendant's liability.

Plaintiff's claim arises from the performance of certain carpenter work in and about the restaurant at the special instance and request of the party of the second part. He testified that after he did the work he found out that Mr. Adams was not the true owner of the restaurant, and he seeks to hold the *Mandarin Company* on the theory that it was an undisclosed principal. In order to hold defendant liable as an undisclosed principal it must first be established that Adams was acting as the agent of the *Mandarin Company* in respect to the carpenter work so rendered. Presumably the carpenter services were rendered in the matter of equipping the premises for restaurant purposes. With reference to this the contract between Adams and the *Mandarin Company* provides as follows:

"As it will require the expenditure of a considerable sum of money to alter said premises and properly equip said premises for restaurant purposes, the second party agrees to furnish the funds for that purpose not exceeding $800, and the net profits mentioned herein shall be paid over to the second party until all sums so advanced by him shall have been paid."

It is then provided that if the contract be terminated before such equipment is paid for, Adams should remove "as his own any and all equipment installed by him under

this agreement, or such proportionate part thereof as he shall not have been repaid for under the foregoing provisions."

The sum and substance of this provision is that Adams agreed to install certain equipment in the restaurant not to exceed $800; that he was to be paid therefor out of the profits of the business in excess of the $300 per month which was first to be paid to the *Mandarin Company;* and that, if he was not so paid and the contract was terminated, he should be permitted to remove the property as his own. In other words, the title to the property remained in Adams until paid for. In installing this equipment Adams was not acting as the agent of the *Mandarin Company.* He was doing that which he had obligated himself to do by contract. The title to the equipment thus installed remained with him until paid for, and until such time the *Mandarin Company* acquired no title thereto.

Under such circumstances I am at a loss to understand how the relation of principal and agent can be said to have existed between the *Mandarin Company* and Adams. The work was performed at the request of Adams and upon his credit. There was no purpose on the part of the plaintiff to hold the *Mandarin Company* liable until long after the services were rendered. As I see no theory upon which the defendant can be held liable, I must dissent.

I am authorized to state that Mr. Justice DOERFLER concurs in these views.